[No. 13815.  Department One.  April 11, 1917.]

## FRED R. THOMPSON, *Respondent*, v. METROPOLITAN BUILDING COMPANY, *Appellant*.[1]

PRINCIPAL AND SURETY—RELEASE—PLEDGES. One who pledges his own property as security for the debt of another is a surety, and is released, if, without his consent, the principal, upon consideration, accepts a new obligation.

SAME—RELEASE—MODIFICATION OF CONTRACT. Mere silence upon the part of a surety when informed of the modification of a contract does not imply assent on his part that would prevent his release.

SAME. Where plaintiff deposited collateral as security for the demand note of another, and the holder surrendered the note without the consent of the plaintiff, under a composition agreement with creditors to hold the collateral for ten years, plaintiff's pledge was thereby released, and the release is not waived by the fact that the plaintiff took a note as indemnity, where the note was worthless.

TROVER AND CONVERSION — WHAT CONSTITUTES. Where pledged property was released by a modification of the contract without consent of the surety, refusal to deliver the pledged property upon demand will constitute a conversion.

PRINCIPAL AND SURETY—RELEASE—MODIFICATION OF CONTRACT—DEFENSES. Where stock pledged by a surety for the debt of another was surrendered without the consent of the surety under a composition agreement with creditors, thereby releasing the pledge, surrender of the stock upon demand cannot be defeated by asserting that the composition agreement was void because of nonperformance by the trustee, where there was no substantial departure from the agreement, and where defendant continued to hold the bonds without offer to rescind the agreement.

SAME — BONDS — MEASURE OF DAMAGES — BURDEN OF PROOF. In trover for the conversion of a negotiable bond, *prima facie* the face value is the true value, and the burden is upon the defendant to overcome this presumption; and where the action is against the one primarily liable thereon, he is not permitted to question the face value of the obligation.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 6, 1916, upon findings favorable to the plaintiff, in an action in tort, tried on the merits to the court. Affirmed on defendant's appeal; modified on plaintiff's cross-appeal.

[1]Reported in 164 Pac. 222.

*Douglas, Lane & Douglas,* for appellant.

*Bausman, Oldham & Goodale (Walter L. Nossaman,* of counsel), for respondent.

WEBSTER, J.—This is an action to recover damages for the conversion of two first mortgage bonds. The facts necessary to an understanding of this opinion are these: On June 15, 1911, the plaintiff, Fred R. Thompson, was the owner of three first mortgage bonds of the defendant corporation, by the terms of which it promised to pay to the holder of such the sum of $1,000, with interest. On that date, plaintiff pledged the bonds to defendant as collateral security for the payment of a note of the American Mortgage & Building Company, in the sum of $2,404.17. This indebtedness was subsequently reduced to $1,304.17, at which time the defendant surrendered one of the bonds. Thereafter the mortgage company became indebted to defendant in the sum of $580.30 for rent, but this was separate and distinct from the note for the payment of which plaintiff's bonds were pledged. On January 31, 1914, the mortgage company, being indebted in a large amount, made a common law assignment to P. B. Truax for the benefit of its creditors. About one year later, it was mutually agreed between the creditors, including defendant and the assignee, that it would be advisable to hold the property until business conditions should improve. To carry this policy into effect, it was agreed that bonds of the mortgage company should be issued payable on or before ten years from date of issuance, to be secured by mortgage upon all of the company's real estate equities and by assignment of all its interest in outstanding contracts, and these bonds were to be accepted by the creditors in settlement of their several claims against the company. Pursuant to this agreement, Truax in due time closed his trust as assignee and released the property to the mortgage company, which in turn executed to Truax, as trustee for the bondholders, an assignment and deed of trust con-

veying to him all the property, both real and personal, owned by the company. Subsequently the bonds were prepared and, on March 23, 1915, Truax wrote to the defendant the following letter:

"Metropolitan Building Company, Seattle, Washington.

"Gentlemen: In accordance with your agreement to accept bonds of American Mortgage & Building Company for your claims against the company, you will find herewith enclosed bonds Nos. . . . aggregating $2,057.05. This aggregate amount is arrived at as follows: [itemized statement including both the indebtedness upon the note and for the rent.] Will you kindly sign and mail to me the receipt which is herewith enclosed?"

On April 2, 1915, defendant wrote Truax as follows:

"Enclosed please find receipt for bonds of the American Mortgage & Building Company as listed thereon."

The receipt referred to in this letter follows:

"Seattle, Wn., March 24, 1915.
"Received of American Mortgage & Building Company its bonds Nos. [being the same as set forth in the letter of Truax], aggregating $2,057.05.
"Metropolitan Building Company,
"Per E. H. Sennott, Asst. Treasurer.
"The Metropolitan Building Company also holds, as security a/c claim for rent due this company from American Mortgage & Building Company, two (2) Metropolitan Building Co. bonds, property of Fred R. Thompson."

By letter of date April 3, 1915, Truax called the defendant's attention to the fact that the note of the mortgage company had not been inclosed in its letter of April 2. On April 6 defendant inclosed the note to Truax, explaining that it had neglected to send it when the receipt for the bonds was mailed. On the back of the note appeared the following:

"Paid April 2nd, 1915.
"Metropolitan Building Company,
"By N. E. Fell, Cashier."

On April 8, plaintiff by letter made demand upon Truax for the return of the two bonds belonging to him. Truax communicated this demand to the defendant, but it refused to deliver the bonds, asserting the right to hold them as security for the indebtedness of the mortgage company to it. Prior to the negotiations resulting in the composition agreement, defendant notified Truax by letter that its claim against the mortgage company was secured by the bonds belonging to the plaintiff, and that it would surrender them only upon payment of the note due it by that company. There is other evidence in the record tending to support defendant's contention that the bonds were not intended to be accepted in payment of the note; but in our view of the case it will not be necessary to set it forth at length. The acts claimed by plaintiff to amount to a conversion of the bonds are: (1) The defendant's claiming the right to hold them as security for the amount due for rent for which they were not pledged; (2) the refusing upon demand to redeliver the bonds after the indebtedness which they had been pledged to secure had been paid; (3) in the event it should be held that the acceptance of the ten-year bonds did not amount to payment of the note, the refusing to deliver the bonds after the security pledge had been released by the acceptance of the ten-year bonds in lieu of the note without plaintiff's consent. The trial court found in favor of the plaintiff and assessed his damages in the sum of $1,600, the amount admitted by the defendant to be the value of the bonds. From this disposition of the cause, defendant appeals. Plaintiff prosecutes a cross-appeal upon the ground that the damages should have been assessed in the sum of $2,000, the face value of the bonds.

The lower court found that the defendant accepted the ten-year mortgage bonds in payment and satisfaction of the balance due on the note of the mortgage company, and that its refusal thereafter to surrender the bonds upon demand amounted to conversion. We are not disposed to disturb

this finding as being contrary to the preponderance of the evidence. Admitting, however, for sake of argument, that the bonds were not accepted in payment, it is undisputed that the defendant voluntarily surrendered the note and accepted bonds in a corresponding amount and asserted the right to hold plaintiff's bonds as collateral security for their payment. Where the owner of property pledges it as security for the debt of another, he is to be treated as occupying the position of a surety, and any change in the primary contract, or the acceptance of a new obligation in different terms based upon a valid consideration moving from the principal debtor to his creditor without the consent of the surety, thereby releases his property from the lien of the pledge. *Reed v. Cramb*, 22 Ill. App. 34; *Westbrook v. Belton Nat. Bank*, 97 Tex. 246, 77 S. W. 942; *Diehl v. Davis*, 75 Kan. 38, 88 Pac. 532; 12 Ann. Cases 550; *Kracht v. Empire State Surety Co.*, 62 Wash. 339, 113 Pac. 773; 32 Cyc. 195.

It is urged that plaintiff knew of the composition agreement and the acceptance by defendant of the mortgage company bonds and did not object thereto; but it is well settled that mere silence on the part of a surety, when he is informed of a modification of the contract between his principal and the creditor or that a new obligation has been substituted in lieu of the original one, does not imply assent on his part. In order to bind him to the new undertaking, it is not sufficient that he passively acquiesce; he must actively consent to be bound by the terms of the new agreement. *American Iron & Steel Mfg. Co. v. Beall*, 101 Md. 423, 61 Atl. 629; *Edwards v. Coleman*, 6 T. B. Monroe (Ky.) 567; Brandt, Suretyship & Guaranty (3d ed.), § 379; 32 Cyc. 161.

Plaintiff did not pledge his bonds as security for the payment of the ten-year bonds of the mortgage company. His property was deposited as collateral to secure the payment of the mortgage company's demand note which defendant surrendered when it took the bonds, and there is no evidence in the record that plaintiff agreed that his bonds might be

held for ten years as security for the retirement of the bonds accepted by defendant. It is insisted that, at the time plaintiff pledged his bonds to defendant, he took from the mortgage company, as indemnity, a note of the Manhattan Building Company and, therefore, he cannot claim to be released by the novation. It was shown that this note was worthless, and for this reason the doctrine of secured or protected sureties does not apply. *Fay v. Tower*, 58 Wis. 286, 16 N. W. 558. It is plain that, when defendant surrendered the demand note to secure which the bonds in question were pledged, and accepted instead the ten-year bonds of the mortgage company without the consent of plaintiff, his bonds were thereby released, and the refusal of the company to surrender them upon demand was evidence of such an act of dominion and authority over them as to amount to a conversion.

This conclusion renders it unnecessary to discuss the question whether the assertion of the right to hold the bonds as security for the payment of the claim for rent was likewise an act of conversion. Defendant urges that the composition agreement was not carried out by the trustee according to its terms and provisions but that preferences were given to certain creditors, and therefore the agreement was void and the acceptance of the bonds did not release plaintiff's property. This contention is without merit, (1) because there was no substantial departure from the agreement; and (2), because defendant continued to hold the bonds and made no effort to rescind the agreement.

Consequently, whether the acceptance of the bonds was intended to be in satisfaction and discharge of the original indebtedness or is to be treated as the taking of a new and different obligation without the consent and agreement of plaintiff, the collateral bonds were released from the lien of the pledge and plaintiff was entitled to their immediate return.

Defendant in its answer denied that the bonds in question were of any greater value than $800 each. There was no evidence as to the value of the bonds other than that their face value was $1,000 each. The court rendered judgment in favor of plaintiff for $1,600, the amount admitted by defendant to be the value of the bonds. Plaintiff insists by his cross-appeal that the judgment should have been for the sum of $2,000. In trover for the conversion of a chose in action such as a negotiable instrument, bond, or other evidence of indebtedness, the plaintiff is entitled to recover as damages the value of the thing converted, and *prima facie* the face value is the true value. The burden is upon the defendant to overcome this *prima facie* evidence by showing in mitigation such facts as will legitimately affect and diminish the face value, such as insolvency or the like. But where the action is against the maker of the instrument or the one primarily liable thereon, it is held that the defendant is not permitted to question the face value of his own valid and subsisting obligation. Under this rule, the judgment should have been in an amount equal to the face value of the bonds. *Robbins v. Packard*, 31 Vt. 570, 76 Am. Dec. 134; *Hoyt v. Stuart* (Conn.), 96 Atl. 166; *Outhouse v. Outhouse*, 13 Hun (N. Y.) 130; *First Nat. Bank of Decatur v. Henry* (Ala.), 49 South. 97; *Kirkpatrick v. San Angelo Nat. Bank* (Tex. Civ. App.), 148 S. W. 362; Daniel, Negotiable Instruments, § 329; Jones, Collateral Securities (3d ed.), § 575; 38 Cyc. 2097. See, also, *Hetrick v. Smith*, 67 Wash. 664, 122 Pac. 363.

We conclude that the judgment should be affirmed on the original, and modified on the cross-appeal, with direction to enter judgment in favor of plaintiff for the sum of $2,000, with interest from March 24, 1915.

ELLIS, C. J., CHADWICK, and MAIN, JJ., concur.