[Civ. No. 6951. Second Appellate District, Division Two.—November 2, 1931.]

CHARLES E. BAND, Respondent, v. JAMES R. WILSON et al., Appellants.

Roy S. Gangestad, Culver & Nourse and Harold J. Richardson for Appellants.

Goudge, Robinson & Hughes and Ernest C. Carman for Respondent.

THOMPSON (IRA F.), J.—The appellants prosecute this appeal from a judgment against them and in favor of the respondent in the sum of $4,516.65 and costs.

The appellant James R. Wilson was an investment broker and the appellant New York Indemnity Company gave bond for him as such broker. In June, 1927, the respondent delivered to Wilson Farmer River Corporation seven per cent first mortgage bonds of the par value of $5,000 and Columbia Gorge Hotel first mortgage bonds of the face value of $2,500, with instructions to sell at seventy-five per cent of their face value, which instructions were subsequently modified to the extent of authorizing their sale at sixty per cent of the face value or their exchange for captial stock of the Garner Royalties, Inc., of the par value of $4,500. After some considerable delay Wilson informed respondent that the reason for the delay was that the latter had not formally executed "sell and buy orders", and that if this were done the transaction could be shortly closed. This was on November 7th, and after Wilson had made an inspection in Washington of the properties securing the bonds. The selling orders authorized sale of the bonds at sixty per cent of their face value. On December 12, 1927, Wilson wrote the respondent as follows:

"Enclosed you will find my receipt covering $5000 par value Riverview Farms Corp. 1st of 1935 and $2500 par value Columbia Gorge Hotel 1st 5 of 1942 which I have taken

in trade at the value of $4516.65 and for which I agree to give you 452 shares of the Garner Royalties, Inc., capital stock at the price of $10.00 per share.''

Respondent promptly refused this proposal, both orally and in writing. Shortly thereafter Wilson pledged plaintiff's bonds and appropriated the proceeds to his own use.

It is now urged by the appellant Wilson that there was no conversion of the bonds for the reason that the written order to sell expressly provided that the bonds might be pledged by him. This contention is the veriest pettifoggery and its inclusion in appellant's brief merits the stern condemnation of this court. The language relied upon relates to marginal transactions or to pledges of securities to cover the account of the client and yet there is not one scintilla of evidence—no, not even a suggestion—that respondent had purchased on margin or was indebted to Wilson for one cent. In fact, the appellant testified that he had no express bargain with Mr. Band by which he might pledge the bonds.

This appellant also says that even though the evidence is sufficient to support a certain finding which will next be considered, yet the findings cannot support the judgment for the reason that the court found that ''No evidence was offered upon which the court can find any market value except the evidence of dealings between the plaintiff and defendant Wilson with respect thereto.'' Here again, possibly, counsel has earned the censure of the court. If his brief is to be the sole guide, we cannot understand that his act was other than deliberate and done with intent to mislead us to a wholly erroneous conclusion. Such conduct, if we are correct in our conclusions, is entirely inexcusable and warrants the conclusion that counsel is altogether lacking in appreciation of his duty as a lawyer and an officer of the court. The thing we thus censure is this: The finding correctly quoted reads: ''No evidence was offered upon which the court can find any market value *or value other than the face value of said bonds* of the plaintiff [describing them] except the evidence of dealings of the plaintiff and the defendant Wilson in respect thereto.'' (Italics ours.) When properly quoted the finding demonstrates on its face that the argument of appellant is without merit.

The last contention, and the only one in which the appellant New York Indemnity Company joins, is that there is no evidence to support the finding of the court which we have already quoted, or to phrase the argument as counsel for the New York Indemnity Company does in one instance, "that the court employed an erroneous measure of damage". The face value of the bonds, as we have noted, was $7,500. The testimony established that respondent had paid within a few dollars of their par value when he purchased them and that they had never been "in default with me at all at any time". Then we make mention of the letter of December 12th, where Wilson agreed to deliver 452 shares of the Garner Royalties, Inc., of the par value of $4,520, and wherein he said that he had taken them in trade "at the value of $4516.65". The agreement was unsatisfactory to respondent because it concluded with the statement that Wilson was "to deliver this stock on or before six months from January 1, 1928". Also it is to be observed in connection with respondent's testimony that Wilson said seventy-five per cent was a little high and therefore when the "sell and buy order" was signed "it was definitely settled then they would work on a 60% basis". And Wilson's figures show that in addition to the sixty per cent the parties had in mind the accrued interest. Appellants assert that Wilson tesified to the value of the securities. We have carefully scanned the testimony of this witness, but we find nothing which we can dignify by the designation of a substantial opinion. He said the cash offer he received for the Columbia Gorge bonds was forty per cent and then he rambled along with a story about some of the holdings of the Riverview Corporation, but he failed to demonstrate that he knew anything either of the bonds or their market value. As evidence, it is not sufficient to establish anything.

Under this state of the testimony, and the fact that the complaint prayed for the sum of $4,516.65 only, we entertain no doubt that the trial court adopted the correct solution. In *Revert* v. *Hesse*, 184 Cal. 295 [193 Pac. 943], the Supreme Court said: "With regard to the question of damages, the general rule is that where a note or other money securities have been converted, 'Their owner is, *prima facie*, entitled to recover their face value with interest' (4 Sutherland on Damages, 4th ed., sec. 1132). Where the converted debt

was held by way of pledge, the amount due the pledgee on the principal debt must be deducted from the value of the debt converted (*Gay* v. *Moss,* 34 Cal. 125), and this was done in the instant case." To the same effect we make reference to *Thompson* v. *Metropolitan Bldg. Co.,* 95 Wash. 546 [164 Pac. 222], *Peek* v. *Steinberg,* 163 Cal. 127 [124 Pac. 834], and *Pierce* v. *National Bank of Commerce,* 13 Fed. (2d) 40. And of course appellants cannot complain of the fact that plaintiff did not pray for the full amount of the face of the bonds. Appellants also attempt to appeal from an order denying their motion for a new trial, but such an order is not appealable.

Judgment affirmed, appeal from order dismissed.

.Works, P. J., and Craig, J., concurred.